USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/3/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X
:
ELODIE PARONI, *Individually and on Behalf of the*
*Estate of* EUGENE PARONI,                                    :          19 Civ. 1034 (PAE)
:
Plaintiff,                 :          <u>OPINION AND ORDER</u>
:
-v-                                        :
:
ALSTOM SA, *Individually and as Parent, Alter Ego,*          :
*and/or Successor in Interest to* ALSTOM POWER UK             :
LTD., ALSTOM POWER, INC., ABB ALSTOM          :
POWER INDUSTRIAL TURBINES LTD., ABB          :
ALSTOM POWER INDUSTRIAL TURBINES, INC.,          :
EUROPEAN GAS TURBINES LTD., EUROPEAN GAS          :
TURBINES, INC., RUSTON GAS TURBINES, LTD.,          :
and/or RUSTON GAS TURBINES, INC.,                             :
:
Defendant.                 :
:
-------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

 Eugene Paroni ("Eugene"), the late spouse of plaintiff Elodie Paroni ("Elodie"), was

diagnosed with, and died of, mesothelioma. Elodie alleges that Eugene's mesothelioma was a

result of his exposure to asbestos over the course of his life, including during his work with a

turbine manufactured by Ruston Gas Turbines, Ltd. ("Ruston"). Elodie brings suit against

Alstom SA ("Alstom"), which she alleges is a successor-in-interest to Ruston. Before the Court

is Alstom's motion to dismiss for lack of personal jurisdiction and Elodie's request for

jurisdictional discovery. For the reasons that follow, the Court authorizes jurisdictional

discovery, to assist in resolution of Alstom's motion to dismiss.

I.      **Background**[1]

A.      **Asbestos Exposure**

Eugene was exposed to asbestos while working as an automotive repair worker in the 1960s; as a welder for Combustion Power Company in Menlo Park, California between 1970 and 1972; and as an HVAC mechanic for J. Lohr Vineyards & Wines and J&J Air Conditioning in the 1980s. SAC ¶ 22. During his time as a welder, he worked at a plant powered by a Ruston TA-1500 turbine, which was manufactured by Ruston. *See id.* ¶¶ 23, 27. That turbine allegedly contained asbestos—the source of Eugene's asbestos exposure there. *See id.* ¶¶ 27, 30.

On or around March 14, 2016, Eugene was diagnosed with pleural mesothelioma. *Id.* ¶ 21. As a result of Eugene's mesothelioma, the Paronis sued Alstom first in California, where they resided. *Id.* ¶ 3; *see* Vega Decl., Ex. A (California complaint) ("Cal. Compl."). After Eugene passed away on April 19, 2017, SAC ¶ 1, service of the summons on Alstom was quashed for lack of personal jurisdiction, as described more fully immediately below. Elodie, as personal representative of Eugene's estate, then brought this suit in this District, *see generally id.* (New York complaint).

_____

[1] The Court's account of the factual allegations is drawn from the Second Amended Complaint. Dkt. 27 ("SAC"). On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider materials outside of the pleadings, including accompanying affidavits, declarations, and other written materials. *See Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015) (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)). The allegations in the complaint are presumed true "to the extent they are uncontroverted by the defendant's affidavits," *MacDermid*, 702 F.3d at 727 (citation omitted), and all factual disputes are resolved in the plaintiff's favor, *see DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001); *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993) (citation omitted). Accordingly, in connection with Alstom's motion to dismiss, the Court has considered the exhibits attached to the SAC, *see* SAC, Ex. A (declaration of Gemma Baddeley) ("Baddeley Decl."); *id.*, Ex. B (excerpts of Alstom's website) ("Alstom Website"); and the declaration of Dennis E. Vega, Esq., Dkt. 31 ("Vega Decl."), and its attached exhibits.

The Paronis have sued Alstom because, they allege, Alstom is the successor-in-interest to Ruston. *See id.* ¶ 8. That conclusion is based on a series of name changes and transactions:

- In 1969, Ruston changed its name to European Gas Turbines Limited, *id.* ¶ 10;

- in 1998, European Gas Turbines Limited changed its name to Alstom Gas Turbines, Limited, *id.*;

- in 1999, Alstom Gas Turbines, Limited, changed its name to ABB Alstom Power UK Limited, *id.*;

- in 2000, ABB Alstom Power UK Limited changed its name to Alstom Power UK Limited, *id.*;

- in 2002, Alstom Power UK Limited changed its name to Alstom Power UK Holdings Limited, *id.*;

- in 2003, Demag Delaval Industrial Turbomachinery Limited ("Demag") purchased Alstom Power UK Holdings Limited, *see id.* ¶ 11; the purchase included Alstom Power UK Holdings Limited's small gas turbines business but not the accompanying asbestos liabilities, which remained with Alstom generally,[2] *see id.* ¶¶ 12–13, 15;

- at an unspecified time, Demag became known as Siemens, *id.* ¶ 11; and

- at an unspecified time, Siemens merged with Alstom, *id.*

## B. The Earlier California Action

On June 9, 2016, after Eugene was diagnosed with mesothelioma but before he passed away, he and Elodie sued 25 defendants in California state court for negligence, strict liability,

---

[2] The SAC alleges that Alstom is the holding company in the ALSTOM Group, which controlled the small gas turbine business. SAC ¶ 15.

and loss of consortium.  *See* Cal. Compl. ¶¶ 3, 8–32.  The original California complaint did not

name Alstom, but Alstom was later amended into the suit.  *See* Dkt. 30 ("Def. Mem.") at 2.

Alstom moved to quash the summons for lack of personal jurisdiction.  *See* Vega Decl.,

Ex. B (California state court decision on motion to quash) ("Cal. Op.").  On September 7, 2018,

the court there granted the motion.  *Id.* at 1.  Although it held that there was no general personal

jurisdiction because Alstom was not "essentially at home" in California, the bulk of the court's

discussion focused on specific jurisdiction, as all relevant events occurred within California.  *See*

*id.* at 2.  In finding no specific jurisdiction, the court found it fatal that the Paronis did not prove,

through admissible evidence,[3] that Alstom was Alstom Power UK Holdings Limited's

successor-in-interest.  *Id.* at 2–3.  It also found that the Paronis did not submit any evidence that

any of the intermediaries had purposefully availed themselves of the laws of California at the

time the cause of action arose or any evidence that their claims arose out of or related to

Alstom's contacts with California.  *Id.* at 3.

At a hearing on the motion to quash, the Paronis requested jurisdictional discovery.  *Id.*

The court, noting that they had not made such a request in their opposition memorandum of law

or at any time before the hearing, denied that request.  *Id.*

## C.    This Action

On February 1, 2019, after the dismissal in California, Elodie filed this suit against

Alstom in this District, alleging negligence, gross negligence, strict products liability, wrongful

---

[3] The court noted that the Paronis did proffer some evidence as to Alstom's alleged status as successor-in-interest, but the court discounted this as unauthenticated.  *See* Cal. Op. at 3.  This included a series of name changes and an incomplete copy of the "Terms of Offer relating to the Sale of Alstom's Gas Turbines Business," which had been previously authenticated by a declaration from a solicitor for Siemens, a former defendant in the same suit.  *Id.*  Although it is not clear whether the evidence that the Paronis presented to the California court was exactly the same as they now allege in the SAC, the SAC does similarly rely on a series of name changes, SAC ¶ 11, and attaches a declaration from a Siemens solicitor, Baddeley Decl.

death, and loss of consortium.  Dkt. 1, as amended, Dkt. 2.  Although Alstom was incorporated in France and has its principal place of business there, SAC ¶ 6, as alleged, it also has a number of connections to the United States and New York.  In the United States generally, Alstom employs 2,200 people and has 15 locations; it also had a reported 1.4 million euros in sales to the Americas in fiscal year 2018–19.  *Id.* ¶¶ 16, 18.  As to New York specifically, Alstom's website states that its "U.S. Headquarters" are located in New York, New York.  *Id.* ¶ 17; *see also* Alstom Website at ECF p. 12.  Alstom also has a New York-based subsidiary and three New York real estate holdings, in addition to a management team member and two directors who reside here.  SAC ¶ 18.

On July 8, 2019, Alstom filed its first motion to dismiss for lack of personal jurisdiction, Dkt. 17, accompanied by a memorandum of law in support, Dkt. 21, and a declaration from Dennis E. Vega, Esq., Dkt. 18, and its attached exhibits.  The next day, the Court ordered Elodie to either amend her complaint or oppose Alstom's motion to dismiss by July 29, 2019.  Dkt. 22. That day, Elodie attempted to file a first amended complaint, although it was rejected as deficient because it did not list all defendants in its caption.  *See* Dkts. 23–24.

On August 15, 2019, Alstom filed a letter asking the Court to grant its motion to dismiss because Elodie had failed to file successfully an amended complaint.  Dkt. 25.  The next day, by memo endorsement, the Court gave Elodie until August 20, 2019 to file an amended complaint and instructed that if she failed to do so, it would dismiss the complaint without prejudice. Dkt. 26.  On August 20, 2019, Elodie filed the Second Amended Complaint ("SAC"), the operative complaint here.  Dkt. 27.  On August 21, 2019, Alstom filed a second motion to dismiss for lack of jurisdiction, Dkt. 29, along with a memorandum of law in support, Dkt. 30, and another declaration from Dennis E. Vega, Esq., Dkt. 31, with its attached exhibits.  On

September 5, 2019, Elodie filed a memorandum of law in opposition.  Dkt. 33 ("Pl. Mem.").  She

asked the Court to dismiss Alstom's motion in its entirety or, in the alternative, give her an

opportunity to conduct jurisdictional discovery.  *Id.* at 7.  On September 12, 2019, Alstom filed

its reply.  Dkt. 34 ("Def. Reply").

## II.  Applicable Legal Principles

On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil

Procedure 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction

over the defendant."  *DiStefano*, 286 F.3d at 84; *see also In re Terrorist Attacks on Sept. 11,*

*2001*, 714 F.3d 659, 673 (2d Cir. 2013).  "[T]he showing a plaintiff must make to defeat a

defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the

procedural posture of the litigation.'"  *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*,

722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*,

902 F.2d 194, 197 (2d Cir. 1990)).

To make out a *prima facie* case of personal jurisdiction, whether based on general or

specific personal jurisdiction, a plaintiff must establish both a "statutory basis" for jurisdiction

and that the exercise of such jurisdiction accords "with constitutional due process

principles."  *Cortlandt St. Recovery Corp. v. Deutsche Bank AG*, No. 14 Civ. 01568 (JPO),

2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015) (quoting *Reich v. Lopez*, 38 F. Supp. 3d 436,

454 (S.D.N.Y. 2014)).  General personal jurisdiction subjects a defendant to suit on all

claims.  *Id.*; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919

(2011).  A court may assert general jurisdiction over a corporation where its "affiliations with the

State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."

*Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear*, 546 U.S. at 919)).

Specific personal jurisdiction subjects a defendant to suit on only claims that arise from the

defendant's conduct in the forum.  *Cortlandt St. Recovery Corp.*, 2015 WL 5091170, at *2; *see also Daimler*, 571 U.S. at 126–27.

"In evaluating jurisdictional motions, district courts enjoy broad discretion in deciding whether to order discovery."  *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 811–12 (S.D.N.Y. 2005) (collecting cases), *aff'd*, 538 F.3d 71 (2d Cir. 2008), *and* 714 F.3d 118 (2d Cir. 2013).  "A district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction."  *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (internal quotation marks and citation omitted).  "If a plaintiff has identified a genuine issue of jurisdictional fact, jurisdiction[al] discovery is appropriate even in the absence of a *prima facie* showing as to the existence of jurisdiction."  *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 207–08 (2d Cir. 2003)).  "However, a court is not obligated to subject a foreign corporation to discovery where the allegations of jurisdictional facts, construed most favorably in the plaintiff's favor, fail to state a basis for the exercise of jurisdiction or where a plaintiff's proposed discovery, if granted, would not uncover facts sufficient to sustain jurisdiction."  *Id.* (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185–86 (2d Cir. 1998); *APWU*, 343 F.3d at 627).

## III.  Discussion

The SAC alleges that this Court has personal jurisdiction over Alstom by way of general jurisdiction.  SAC ¶ 8; *see also* Pl. Mem. at 3 (explaining that plaintiff asserts only general jurisdiction, not specific jurisdiction).  Alstom argues that, as a French corporation with its principal place of business in France, none of its contacts with New York renders it "essentially at home" in the state for purposes of general jurisdiction.  *See* Def. Mem. at 13–15.  In addition,

although Alstom is not presently challenging its alleged status as successor-in-interest to Ruston, it reserves its rights to do so at a later stage. *See id.* at 5 n.1.

In response, although reciting the full range of Alstom's contacts with New York, Elodie relies most heavily on Alstom's website's statement that its "U.S. Headquarters" are in New York to argue that Alstom is subject to general jurisdiction here. *See* Pl. Mem. at 4–7. Alstom counters that the New York headquarters are actually that of a subsidiary in the transportation industry; this subsidiary, it argues, has no connection to this case and thus cannot support general jurisdiction. *See* Def. Reply at 1–2, 5; *see also* Def. Mem. at 18. Elodie rejoins that Alstom's statements as to the subsidiary's lack of connection to the U.S. headquarters and to this litigation are unsworn statements made by its counsel in its memorandum of law. *See, e.g.*, Pl. Mem. at 1. She therefore seeks jurisdictional discovery to probe Alstom's business activities in New York and its relationship with the subsidiary at issue. *Id.* at 7.

The Court concludes that jurisdictional discovery is required to enable the Court reliably to determine whether there is personal jurisdiction over Alstom. That is so for two reasons.

First, Elodie has identified a genuine issue of jurisdictional fact: whether Alstom conducts business and has a domestic headquarters in New York, or whether that headquarters (and its corresponding business in New York) is that of an Alstom subsidiary without connection to this litigation. The SAC alleges that Alstom's U.S. headquarters are in New York, supported by a statement to that effect on Alstom's website. *See* SAC ¶¶ 8, 17; Alstom Website at ECF p. 12. In contrast, Alstom submits several exhibits, attached to the Vega Declaration, that could potentially support its contention that the "U.S. Headquarters" relates only to its subsidiary, including Alstom's corporate registration documents that it filed in France, Vega Decl., Ex. D, and a document detailing the results of a search of the database for the New York Department of

State's Division of Corporations, stating that no business entities were found in a search for "Alstom SA," *id.*, Ex. E. However, in considering a motion to dismiss for lack of personal jurisdiction, the Court must construe all pleadings and affidavits in Elodie's favor and resolve all doubts in her favor. *DiStefano*, 286 F.3d at 84. And Alstom's unsworn statements in its legal brief are insufficient, on their own, to persuade the Court to grant its motion to dismiss. *Cf. Giannullo v. City of New York*, 322 F.3d 139, 142 (2d Cir. 2003) (a "memorandum of law . . . is not evidence at all"). Further, although it is not clear that Elodie disputes the point, Alstom's unsworn statement that the subsidiary is unrelated to this litigation is also unsubstantiated.

Second, in addition to the issue of Alstom's New York contacts, another jurisdictional issue merits attention. Although Alstom chooses not to dispute the issue here, *see* Def. Mem. at 5 n.1—as it did in the California action, *see* Cal. Op. at 2—it is an open question whether Alstom is in fact a successor-in-interest to Ruston. The Court authorizes discovery on this issue, to allow Elodie to determine whether Alstom is the proper party to sue or whether there are other entities which she may pursue.

The Court thus authorizes jurisdictional discovery on two issues: (1) the extent of Alstom's business activities in New York, including its alleged U.S. headquarters and the relationship to its purported New York subsidiary, and the relationship if any between the U.S. subsidiary and this litigation; and (2) the connection between Alstom and Ruston, as it relates to asbestos liabilities. The parties are directed to complete this discovery within two months of this order, as set forth below. Within one week of the close of this discovery, Elodie is to file a letter on the docket of this case stating whether she intends to pursue this case in this District or whether she consents to a dismissal of this action, without prejudice, for lack of personal

jurisdiction. In the event of the former, Alstom will then have two weeks to move anew to dismiss for lack of personal jurisdiction.

## CONCLUSION

For the reasons outlined above, the Court grants Elodie's request for jurisdictional discovery. The parties are directed to complete jurisdictional discovery by May 4, 2020. By May 11, 2020, Elodie is to file a letter on the docket of this case stating whether she intends to continue pursuing this action in this District or consents to a dismissal without prejudice for lack of personal jurisdiction. In the event she continues to pursue this action, Alstom's motion to dismiss for lack of personal jurisdiction is due May 25, 2020; Elodie's opposition is due June 8, 2020; and Alstom's reply is due June 15, 2020.

The Court accordingly denies Alstom's motion to dismiss, without prejudice to its right to renew that motion upon the close of jurisdictional discovery. The Clerk of Court is respectfully directed to terminate the motions pending at dockets 17 and 29.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: March 3, 2020
        New York, New York